23-7306 United States v. Uvino May it please the court my name is Elizabeth Mr. Uvino is challenging a restitution order that was entered holding him responsible for paying all losses resulting from a conspiracy which he had joined almost 20 years after its inception the trial court made no findings of fact to justify this order and they didn't it didn't permit Mr. Uvino to contest any evidence that might have been used to underlie it so can I ask you're not disputing the total restitution amount you're just correct correct for okay how do we how do we knew can you swear this with bingus I mean he why did he not know or should have known about the previous losses in the conspiracy well I would say before number one there's not any evidence put into the record at Mr. Uvino's sentencing that establishes that one way or the other and the court makes no finding about that one way or the other the court doesn't make explicit findings but there is the argument raised that he should only be liable for restitution of the amounts after he joined the conspiracy and the court denies that but so it does seem the court seems to think that he was aware of the extent of the extortion of John Doe one when he joined the conspiracy or at some point during the conspiracy and why would that be right so if he said if the evidence shows that he had a decades long relationship with John Doe one he was part of the crime family he worked at he even worked at the union fund and then there was that record the conversation in the record where he acknowledges that there was a previous history of extortion why isn't that enough of a basis for saying he was aware of the extent of the extortion well I'd say two things and the first one is we have no way of knowing from this record if that in fact is the rule of law that the district court was following because the government says no he's liable for all of it that's what the law says and yeah but we are allowed to affirm based on anything unlike the agency case we just uh we just considered we can substitute our own reasoning you know when we hear an appeal from the district court so if we think the record shows that uh that that's the reality we could affirm right because it's not consistent with the procedural requirements for imposing a restitution order this court has said more than once that in order for a restitution order to be upheld there's no specific procedures that's required you don't have to have an evidentiary hearing but you do have to give the defendant you're imposing the order on an opportunity to contest and challenge what you're relying on to make it the one record conversation that the government is relying on to show that Mr. Uvino was aware is not in the record at his sentencing proceeding Okay, what about the PSR? Right, doesn't the PSR detail the several meetings with the co-defendant members discuss the logistics of infiltrating and controlling the labor union and extracting John Doe? What about that? It still doesn't give Mr. Uvino a chance to present any opposing evidence or make the argument. There's actually a relatively similar case this circuit decided in 2020 which is United States versus Harris. Can you also just tell me though, why at Uvino's sentencing was that not enough? You had the opportunity. Mr. Uvino's counsel says he joins late, he shouldn't be held liable for the things subsequent to his joining, which is a clear statement, the law says you can't do that automatically, the court has to go in and make a specific finding. Also it's true, the court has to decide that he was aware of the extent of the extortion when he joined the conspiracy, or maybe at a subsequent point if he stays in the conspiracy. Sure, but something. And if the court is in fact relying on the recorded conversation in which he seems to be aware of the history of extortion, or the history of his relationship with John Doe 1 or his history of the organization, whatever, maybe it's right that the district court should have given him the opportunity to contest the basis of that finding, but we certainly would review that for harmless error even if it is an error. So if we think it's pretty compelling, what would you have said that you didn't get to say about why it doesn't show that he was aware of the extent of the extortion? There is at least one conversation, and we referred to it in the reply brief, where they're having conversations about this, and Mr. Avino is in a conversation with Mr. Ricardo, this is in the pre-sentence report at 37, and he talks about things about how at this point John Doe 1 is being told to begin making payments. Yeah, I know. So I read that. So paragraph 37, it says John Doe 1 needed to begin paying Vincent, Ricardo, and Avino. It's true that the PSR says that, but then in the same section, the PSR says the money extracted from John Doe 1, a result of the extortion, is estimated to have exceeded whatever. However, in relying on his bank records from 2010 through the conclusion of the extortion in July 2020, there's a loss of approximately $312,000. So even though there's this one account of the conversation that uses the word begin, it's pretty clear that the factual findings of the PSR are that it didn't simply begin then. Correct. So the only way to read that is some particular form of payment or some schedule of payments was beginning then but not the extortion itself. I would disagree with that because that's not the relevant question. The relevant question isn't did the extortion start before then. I mean the question is what does Mr. Avino understand it to be, and this is one conversation. So what I'm saying is we have that recorded conversation where it's clear that he's aware that there was extortion as of 2008, which is before this date. And so this is a factual finding of the PSR giving an account of a conversation. But if I have a recording of Mr. Avino in his own voice expressing awareness of extortion back in 2008, why isn't that just dispositive? I'm not quite sure what Your Honor is referring to about 2008. This conversation Well, because it says after that guy got out of prison and the guy got out of prison in 2008, and so that's how we know what he's talking about, right? No, because the conversation at least in PSR 37 I mean John Doe once said no, I have always had the money. And we said who? He said I was giving it to you, cousin. And then Ricky Ardo says yeah, when I first came home. Came home meaning when he was released from prison in 2008. Yes, when Mr. Ricardo comes home. This is a conversation that Mr. Avino is having in January of 2020. And there are other conversations that are not Right, so in January of 2020, Avino is expressing awareness that John Doe I was extorted since Ricky Ardo was released from prison in 2008. It means he was aware of extortion going back to 2008. Well, so we have a combination of Avino stating his longstanding ties to John Doe I and to his co-defendants at the sentencing hearing. We have the PSR with the extensive coordination, and then we have the transcript between Avino and Vincent. Is that not preponderance of the evidence? What you don't have is an adversarial proceeding where Mr. Avino is permitted to bring in other conversations. There is a wealth of wiretapping in these cases. A lot of it doesn't come into the PSR. And it doesn't get mentioned, obviously, at Mr. Ricardo's sentencing because it's not relevant to his restitution order. So what happens here is that Mr. Avino, this order is imposed on him when he has no chance to get up and say, Here's other evidence you should be looking at, Judge. Here's how you can contextualize this. And that is required under this court's precedence. The government submitted the Richardo Avino conversation that my colleagues have been quoting in May of 2020. In Mr. Ricardo's sentencing, not Mr. Avino's. Now, is that your concern that you didn't know about this conversation when you submitted your 2023 memorandum? Is that the concern? Mr. Avino's counsel in the sentencing proceeding didn't know about it. I know sometimes it's the trial lawyer who's up here, but that's not me. The question isn't whether or not he knows about it. The question is whether it's reasonable for him to think that the court can simply impose an order that was entered without any participation or notice to Mr. Avino without having any consideration of other evidence. If we were to send this back so that you had a chance to deal with this Richardo Avino conversation, are you saying this isn't enough evidence coupled with some of what Judge Perez said to support this finding? I'm saying that if it were sent back, Mr. Avino would be allowed to bring in other evidence, which would tend to, there are, like I said, there's one conversation that was in the PSR, but there are other conversations which are not in the record here because there were things that came up in search warrants, wiretap affidavits, things that didn't come in because these defendants all pled, which would be similar, which would indicate that Mr. Avino is becoming aware of this late in the process and doesn't necessarily know. In May of 2021, Richardo effectively tells him that they've been sending the money since at least when he came home from prison. And Avino's Avino response to that, he says, I'm sure he continued to send whatever he was sending. So isn't that enough to support the required finding? I'm not saying the court made it, but isn't it enough to support the required finding that he basically understood that this wasn't a scheme that that started when he joined it? It had gone back at least to when Richardo was released from prison. It is a possible finding, but it is not consistent with the law and due process. What I'm saying is not that it's impossible to find it, but you want the district judge to look at this, hear you on whatever you've said, and then he'll make whatever finding he makes. Correct. We're asking for the order be vacated and remanded so that the district court can reconsider the issue in the light of a proper legal standard, which would be one, again, it's not clear to me that he imposed Bengis, that he took into account the issue of scope of knowledge, and two, that there are procedural requirements, and this court has in the past reversed restitution orders similar to this one, where they were determined in a FATICO hearing for a co-defendant that the defendant didn't know anything about. You have to be allowed to contest it, and that's even more the case here. Like as I said, it might be an error, but I think we would review it for harmless error. And so you mentioned the conversation that's in the PSR. You said there's other evidence that would come in that would have counteracted this. It's not on the record, but maybe could you just give a flavor of what is the kind of evidence that could be introduced that would counteract this recording that says that he was aware of the extortion going back to 2002? Because there are other conversations where they talk about when the payments begin, and Mr. Uvino is in these conversations that indicate that the payments had not been going on previously, that they began closer to the time when Mr. Uvino is getting involved. And there is also repeated statements from agents describing that Mr. Uvino's understanding is that they begin later in the process. Yeah, but if then later on he has this recording where he expresses an understanding that it began in 2008, doesn't it mean that at some point during the conspiracy he realized that it had a broader scope? Maybe it does, and maybe it doesn't. Again, I would apologize because I don't have the exact dates of the other conversations, but, again, there are wiretaps going on for quite some time in this case. And I think that the question here isn't would this be an acceptable result had the court done what it was supposed to do procedurally. And I don't know whether it is or not because we don't have a fleshed-out record. We don't have any kind of argument about this. We don't have all the evidence in front of us. And what we do know is that the district court imposed this order without – So the reason why the error might not be harmless is because given an opportunity to introduce other evidence on this issue, he might have evidence of other recordings that evince an understanding that the extortion began at a later time. Right. And how would you explain this recording about him seeming to be aware of the extortion going back to 2008? I do – I think it is very difficult to contextualize these things when we have guys who are talking to each other all the time about everything. And, in fact, there are contradictory statements that Mr. Uvino is hearing about when the payments are made. So maybe he was just kind of saying offhand, like I had this conversation with John Del Juan. He talked about making payments before. The guy says, yeah, when I came home, but he didn't internalize the implications of that. And he hears in a lot of other cases that John Doe hasn't been paying the – So that would be the argument. Correct. And this Court's been pretty clear that you can't impose restitution obligations without allowing that opportunity to be heard. And that didn't happen here. Okay. Thank you, Ms. Johnson. You have your time for rebuttal. Thank you, Your Honor. So we'll hear from you again, but let's turn to the government. Mr. Reich. Mr. Reich, while you're getting set up, I just want to acknowledge that the Edward B. Shallows Junior High School is watching in our Learning Center. So I'm sure they appreciate the lawyering that they're able to observe now. Thank you very much, Your Honor. And thank you, Your Honors. May it please the Court. My name is Andrew Reich, and I represent the government in this case. And I represented the government in the proceedings below as well. The District Court's judgment requiring Mr. Uvino to pay restitution to his victim should be affirmed. Uvino argues that the District Court erred by holding him responsible for restitution arising in part from conduct that occurred before his active participation in the charged conspiracy. But this Court has made clear that if a defendant who joins a conspiracy knew or reasonably should have known about some or all of the conspiracy's past criminal conduct, his restitution order should encompass past loss amounts. And that's Bengis and Fiumano. So can you tell us specifically your colleagues' argument that they didn't have an opportunity to be heard about his share of the restitution? Absolutely, Your Honor. Thank you. In Sabnani, this Court reaffirmed that the sentencing procedures employed to resolve restitution disputes are within the District Court's discretion so long as the defendant is given an adequate opportunity to present his position. I understand how you would argue that the Ricciardo-Uvino conversation from May 13, 2021 supports knowledge. But as counsel points out, that was not put into evidence at Mr. Uvino's hearing, sentencing hearing. So what are you relying on to support the District Court's finding? Your Honor, I think that we can rely both on that and two items that were... How do you rely on that? Your Honor, counsel has stated multiple times that Mr. Uvino was not aware of the litigation around Dominic Ricciardo's restitution order. Counsel was absolutely aware of that litigation because he mentioned it specifically during sentencing. Are you taking the position that he should have been aware, that counsel for Mr. Uvino should have been aware of every piece of evidence offered in the Ricciardo proceeding? And if so, do you have any authority that says that that is a permissible conclusion? No, Your Honor. I'm not taking that position. But in this case, we know that he did have knowledge of that because he raised that order. He raised Dominic Ricciardo's restitution order to the judge at his own sentencing. No, Your Honor. All right. So how do we... As I gather, there were lots of conversations, and there's no doubt that Mr. Ricciardo's involvement goes back quite a way. So I don't think Mr. Uvino would have had any reason to question whether Mr. Ricciardo's restitution was properly ordered right from the get-go. What is the evidence that you relied on in front of the district court to show that Mr. Uvino... Thank you, Your Honor. So that brings me to the second two points. And these are both points that were in the PSR. First, as a sworn member and former acting captain of the Colombo crime family, Uvino was deeply integrated in the criminal activities of the organization. He became directly involved in supervising the Colombo crime family's efforts to penetrate the labor union, which included the extortion of John Doe No. 1. And he kept the family's senior administration abreast of developments. He no doubt had, or at a minimum had access to, information about the execution of the very scheme that he ultimately came to manage. That was in the PSR in advance of sentencing. How does that help us with Mr. Uvino? He is John Doe No. 1, right? No, I'm sorry, Your Honor. I'm sorry. Mr. Uvino is the defendant in this case, and he was charged with extorting John Doe No. 1, who is the victim. And what does the captain say about how far back that went? There's a discussion, Your Honor, I was referring to the discussion in May 13, 2021, where another individual makes clear that that went back as far as a particular individual had been released from prison, which is in 2008. I'm sorry. Try not to rely so much on your notes and respond to the court here. The May 13, 2021 conversation, that's the one we've just been talking about with Uvino and Ricciardo. I'm asking you what apart from that you've got. Yes, Your Honor. So apart from that would be one, Mr. Uvino's position in the Colombo crime family as a leader who is in charge of this particular extortion scheme. Sure. So that's paragraphs 75 to 76, 81 to 82, 92 and 101. OK, so you think it could be inferred based on his position in the crime family that he would have known about the scope of the extortion operation? Absolutely, not only based on his position in the family, but also based on the fact that as it states in the PSR, he came to manage this very extortion scheme. So there's no doubt the parties are not in disagreement that he actively started participating in the extortion in November 2019. But it is clear that as he is, it is also clear that he came to manage that scheme as a leader of the Colombo family and that he reported back to Colombo leadership about the progress of the scheme. You're sort of saying it would be obvious that if he came to manage the scheme, he'd be aware that it wasn't beginning with him. He was taking over something that had existed before. That's exactly right, Your Honor. And then the third point that I would mention. Sorry, make the third point first. Thank you. So the third point is that, as Your Honor mentioned, Uvino worked with John Doe No. 1 at the Union Health Fund, and that's at Appendix 320. Uvino was, by his own admission, extraordinarily close with John Doe No. 1 and Vincent Ricardo, with whom he executed this scheme, as well as others involved in the conspiracy, both personally and professionally. And so the court had more than enough evidence before it at the time that it made its restitution determination that Mr. Uvino knew or should. Maybe it's a permissible inference that just being integrated into the crime family and being familiar with the victim at the union, you might infer that kind of knowledge. But what about the conversations where he seems to say the extortion is going to begin at a later point in time when he joins the conspiracy? Sure, Your Honor. So I'd like to make two points about that. First is that my opposing counsel pointed to that particular conversation. She said that there were others like it, but she had no others that she was able to point to. And I'm not aware of any on the record that contradict the May 13th conversation that we've discussed. I'm not seeing, and I may be looking at them too quickly, in any of the PSR paragraphs that you just pointed to, any reference to activities going back, as far as you're saying? Most of them deal with activities in 2021. What am I missing? Where is there a reference to earlier activities in any of the paragraphs you just pointed us to? There is not in those paragraphs, Your Honor. Those are the paragraphs that indicate that Mr. Uvino was a leader of the Colombo crime family who came to have a leadership role and a supervisory role over the— Right, but now we are concerned with whether he was involved in the scheme back in, what is it, 2000? What year are we going back to? Your Honor, the parties agreed that he became actively involved in the scheme in November of 2019. And so where in the paragraphs you gave us is that evidence? Your Honor, that's not in dispute. The PSR, as well as both parties' sentencing submissions— Let's stay folks. How far back do you want him to be held accountable for restitution? To what year? That would be roughly the 2011 timeframe, which is what Judge— Where in any of the paragraphs in the PSR does it attribute activity or knowledge or anything going back to 2011? Because as I said to you, I see how you could argue that the Ricciardo-Uvino May 13, 2021 conversation supports that inference. But I'm not sure I'm seeing it in what you say is in the PSR, so help me out. Of course, Your Honor. So paragraph 29 describes the extortion scheme from its inception, Your Honor. Yes. Tell me where there's anything that links Ms. Druvino to it. It does not, Your Honor. Paragraph 29— So I don't have to read the PSR to find where there's evidence of 2011, knowledge of 2011? Or are you just relying on he became a captain or he became a leader—wait, when did he become a leader? Your Honor, soon after he began in 2019 engaging in this conspiracy. Where is there anything that he knows that this particular extortion scheme went back to 2011? Your Honor, I would argue that the District Court was able to make that determination on the inferences that I presented to you. It does not explicitly say in the PSR. Well, I don't know where I'm supposed to draw those inferences from because, as I just said, the paragraphs you cited to us don't seem to support that other than that he was a leader. So is your argument that if he was a leader, he must have known everything that went back to 2011? Is that the argument? In part, Your Honor, but it's also that he came to manage this particular extortion scheme. Do you think that's a compelling argument? Yes, Your Honor. That if you become a leader in 2019, you must have known about an extortion scheme, or you must have known that an extortion scheme went back to 2011? Yes, Your Honor. He came to manage this particular extortion scheme. Did you stitch this together for the District Court and present it as an argument? Your Honor, this argument was presented— Did you ever put all these pieces that you're now citing to us together for the District Court and say, this is why you take him back to 2011? No, Your Honor. At sentencing for Mr. Uvino, the government offered to brief this issue for the District Court, and the District Court did not require additional briefing on this issue. So, Your Honor, there are—I'm sorry. So, Your Honor, there are three separate circumstances that the government is arguing give rise, on the record, before the District Court at the time of sentencing, to the inference that the District Court clearly made with respect to the defendants knowing or should have known of the history of the conspiracy under Bengis. And just to continue along the lines of the arguments that my opposing counsel— So, I get your argument that, you know, if you take over a scheme, like let's say just take over a business, I would know if I'm launching a new business or continuing one that's been in operation. That seems like a reasonable inference, especially if I am familiar with the product or the customers, which is, I guess, the equivalent of being familiar with John Doe One and the union for decades before. I get that, but you were about to answer my question about why doesn't the conversation about we're going to begin at a later time counteract that inference. Thank you, Your Honor. Yes, as to that particular conversation, I believe that it is being taken out of context and it's clear that the District Court also did not count— excuse me, interpret that conversation the way opposing counsel is interpreting it because that is in the PSR. But, Your Honor, it is clear from the record that there were payments being made, and it's undisputed that there were payments being made leading up to that conversation. And so it's impossible to interpret that conversation to mean that its participants didn't believe that the payments were being made. So why is it impossible to believe that Uvino might have thought that it was beginning then? Well, I don't believe it was Uvino that made the statements that opposing counsel has referred to. He was just present during the conversation. But how do we know that he didn't think it when it started in 2017? Oh, you're right. Or 2015. I'm sorry, Your Honor. How do we know he didn't know of it going back to 2017 or 2015? I mean, you want to take it back that he had knowledge of it back to 2011. And I'm trying to figure out what's the basis, other than the Ricciardo-Uvino conversation, for thinking that. Absolutely, Your Honor. Thank you. So the government's position is actually that he had knowledge of the scheme dating back to 2001 from its inception. The only reason the government is cutting off the calculation at 2011 is because, based on the evidence of John Doe's payments, the district court concluded that the total restitution amount should be the amount dating back to 2011. That is the time period that the government was able to actually produce evidence of withdrawals from John Doe's bank account. Before that time period, the government had additional circumstantial evidence of the restitution amount, and the district court determined that it was going to go. I'm so sorry, but you're not answering the question. Perhaps my question wasn't clear. What is the evidence that he knew going back, whether it's 2011, 2008, 2001, as opposed to 2017 or 2016? Whatever. I'm trying to figure out how Uvino's knowledge is demonstrated here. Sure. Thank you, Your Honor. So at the very least, the evidence that his knowledge is that the scheme went back to 2008 is from the May 13th conversation that we've discussed. Okay. In that May 13th, 2021. Now, what else? Because that's not part of the record in the district court on Uvino's case. So what else? Well, Your Honor, I would disagree, actually. In cases such as Maurer and Subnani that the opposing counsel has cited, the district court in determining restitution looked at the full history of the case and the record of the case in making its decision. In those cases, defendants requested specialized hearings on restitution, which, by the way, in this case, Mr. Uvino never requested, never requested that opportunity. And the district court in those cases did not afford them an evidentiary hearing. But in both of those cases, this court determined that the district court's decision on restitution was justified based on the lengthy record before it leading up to sentencing. I'm sorry, you're being a little, I can't tell. I mean, so I, I think, and then Judge Raju and I are now having the same question. I'm going to see if I'm going to have better luck getting out of you. Okay. One basis is the fact that we're supposed to reach an inference because he was the leader he knows about. The second is this Ricardo conversation. And then I thought you were going to say the third was his sworn statement of his closeness to the person they were extorting. Is that your three reasons? Yes, Your Honor. Those are the three reasons. So just to be very clear, the three reasons you keep referencing are, one, the PSR because he was a captain. Or because he was, the two was the, the, the conversation that happened in, that was recorded with Ricardo that was in somebody else's sentencing. And the third is his sworn statements that he has known the head of the union that they were extorting. Absolutely, Your Honor. And those are the three reasons. And it's not just that he was a captain that was listed in the PSR, Your Honor. It's in particular, and he was an acting captain, I believe. But it's in particular that he came. So you're saying the PSR actually talks about the scheme going that far. It absolutely does, Your Honor. So at the very least, he was on notice that somebody thought the scheme was going that far. And if they had objected to it, they should have said something. That's absolutely right, Your Honor. And it also notes that he came to manage this particular extortion scheme. So this was a broad sweeping case with a number of racketeering acts. And this one in particular, the extortion of John Doe No. 1, the PSR speaks to the history that Mr. Uvino came to manage that specific extortion scheme. Okay. And so when do you think they had the opportunity to make their case that this was not appropriate, to hold him responsible? Your Honor, at sentencing, they had the opportunity to make that case. And Mr. Uvino's counsel made an argument to the judge that he was only involved in the conspiracy from November 2019 going forward. He made reference to the district court's previous order in August of that year as to Mr. Ricardo. And he objected to that order and asked the judge that he order restitution as to Mr. Uvino. We all agree that the district court didn't use like the magic words that said specifically things, right? We all agree that. So what do you think in the record should give us enough assurance that they properly considered Uvino's objections and explained its reasoning? Where in the district court opinion is that? Your Honor, I would say that given the way that this played out at sentencing, given the fact that this was in the PSR, the lower number- I'm sorry. Again, I'm asking the question, what about the district court opinion should give us the reassurance that the district court properly considered objections and explained its reasoning even though you have just said and we can all see that there weren't like very specific magic words saying I'm holding these findings as to X, Y, and Z. Okay? Of course, Your Honor. Your Honor referenced an opinion. There's not an opinion as to Mr. Uvino as far as I'm aware. It was a sentencing proceeding wherein Mr. Uvino's counsel raised his issues- Yes, I'm sorry. I misspoke. Thank you for clarifying that. Yes. Of course, Your Honor. So Mr. Uvino's counsel raised his issues with restitution. The government opposed. The judge asked the government its view. The government opposed the arguments being made by Mr. Uvino's counsel, and the government offered to brief the issue and provide additional information for the court if the court should need it, and the court declined that invitation. The court did not make any other- Yes, Your Honor. I'm looking at your letter to the court, your September 20, 2023 letter. This is the only letter to the court, right? Correct, Your Honor. Okay. And I'm reading at page 158 through 160 about the extortion scheme. The opening sentence of which says from approximately November 2019 to September 2021, Uvino played a central role in a scheme to infiltrate the land and extort the labor union. So that's the dates. That's the window you give the district court, right? 2019 to 2021? That's the date of his central role. Yes, Your Honor. Okay. Then you, in the same part, say that in the next paragraph, Uvino's co-defendants, Vincent and Dominic Ricciardo, extorted since as early as 2001, but neither in that paragraph nor anywhere else in this do you say that Uvino became aware of that, right? That's correct, Your Honor. That's not mentioned there. So, and you also quote from various communications at pages 159 and 160, but not the May 13, 2021 conversation, right? That's correct, Your Honor. That issue did not arise yet. I'm just hard pressed for how you gave the district court anything that would support a conclusion that he was aware of extortion of this labor union before 2019. I mean, I understand that, I mean, your adversary says this could go back for a hearing, and you definitely put in the May 13, 2021 letter, perhaps other things, but I'm trying to figure out how we affirm on this record. Absolutely, Your Honor. And I appreciate the opportunity if I could speak to the requirements, the procedural requirements that I think Your Honor is concerned about. But we have precedent that says that you have to show knowledge of someone's, you have to show someone's knowledge that the scheme preceded them to hold them accountable for restitution. So I just am looking for where you gave that to the district court. Absolutely, Your Honor. I think that was before the district court in the three places that I've mentioned. One would be the May conversation, another would be in the PSR, and another would be- Well, maybe you've gotten a sense that at least I am not convinced that you can rely on the May conversation, so let's focus on other things. That's fine, Your Honor. So I think that there's more- Do you acknowledge that you know where to reference it in the one letter? And it's quite a lengthy letter, but you know where to reference that in the materials to the district court. That's correct, Your Honor. Mr. Uvino raised his objection to the restitution issue at the sentencing hearing, and so the government offered to further brief it, but the court declined that invitation. I think that it's clear- But, I mean, and so you want us to think that the district court didn't ask for it because it was thinking in its head. You know, there's that conversation from May 13th in the Ricciardo case between Uvino and Ricciardo, and that's my basic- I think that's what went on here. Is that what you're urging us to conclude? No, Your Honor. I think that there's- Okay, so let's be practical and realistic here. What else? Well, Your Honor, to be clear, I think that in part the court was aware of the previous litigation with respect to Mr. Ricciardo. And that Mr. Uvino was aware that he was being asked to deal with that? Yes, because Mr. Uvino raised that order at the sentencing hearing, Your Honor. Yeah, why are you asking this? He referred to the sentencing order. He didn't refer to this letter. He referred to the restitution order as to Mr. Ricciardo, Your Honor. And how did he refer to it? He called it the August 30 or August 31st order, Your Honor. Right, but there's no doubt that Mr. Ricciardo was liable for the scheme from the start. Right, so how would his reference to it have therefore supported an inference that he was acknowledging his knowledge of the activity going back to 2001, 2008, pick whatever date you want? How would his reference simply to the fact that Ricciardo was under a restitution order that was expansive support his own knowledge? Because, Your Honor, Mr. Uvino argued at that time that his participation had only begun in November of 2019, and therefore he should have a different restitution order that Mr. Ricciardo had. Right, so how does referencing Mr. Ricciardo's order support a contrary inference? I don't think it does, Your Honor. A contrary inference to what? You've just said to us that he was aware of the Ricciardo-Uvino conversation because he referenced the Ricciardo restitution order, and that doesn't appear obvious to me. So I'm trying to figure out whether you really think that his reference to the Ricciardo restitution order is enough to find that he understood the district court was relying on the Ricciardo-Uvino conversation. I understood, Your Honor. I think I understand what you're asking now. So that was litigated in connection with that order. The parties made submissions to the court, and the government at that point fully explained that May conversation. In the Ricciardo sentencing. Correct. But, Your Honor, to reiterate, I do not think that we need to rely on that alone. I think that it's clear that the district court had before it the information in the PSR about Mr. Uvino's leadership role in the Colombo family, and in particular, his supervision of this particular extortion scheme. I just want to clarify two things. So, one, I mean, you said a moment ago we shouldn't infer that this is what the district court was thinking, but I'm not sure why. I mean, your argument is Uvino made the argument that the restitution order shouldn't apply to him in full. The government opposed that. The district court rejected the argument even though the arguments were before it. And we normally presume the district court has considered all arguments before it unless there's a strong reason to conclude otherwise, and there isn't here. So your position is the district court must have made that factual determination, and you think it's supported by the record. I think that's absolutely right, Your Honor. But even if it's an error, it would be reviewed for harmless error, like nobody's suggesting otherwise, right? And so you're saying it would be at most harmless because we have dispositive evidence. I think that's absolutely right, Your Honor. Okay, now, as you can tell, some people think – or the second point is the status of the May 2021 conversation. So there's a question because it was introduced in the other sentencing whether that's part of the record in this case. It sounds to me like you were suggesting that we have said in prior cases that when you're dealing with a restitution order that is applied to co-defendants, the record of the development of that restitution order, even in the proceedings of the co-defendants, is part of the record of the ultimate application. Is that right? I don't know if I would say that with such particularity, Your Honor. I was merely saying that in Maurer and Sabnani, the courts made reference to the fact that they were reviewing the record before them in the case, not just the arguments being made at sentencing in connection with sentencing. Okay, so I guess that's my question. So if we think the conversation is important and it was part of the sentencing of a co-defendant and not part of the sentencing or even the otherwise because it was a plea, otherwise in the case of this defendant, is that part of the record on which we can rely? I don't think there's any problem in relying on that, Your Honor. I think that in other contexts, we develop factual law of the case from other proceedings in the case, facts that are… It's the same case because they're co-defendants and they're subject to the same restitution order? I don't know that they're subject to the same order. I think what's being appealed here is the order as to Mr. Uvino in particular, but I think that facts develop throughout the case. Presumably and separately liable and presumably, so is that why it's properly considered? Why Mr. Ricardo's order is properly considered? Why is it properly considered part of the record in this case? Your Honor, I would say just because it is on the docket and part of the record in this case. Obviously, the district court had in mind how he came up with the restitution order that he is then applying to Mr. Uvino. I think that's right. That involves evidence that happened at earlier sentencings of co-defendants, right? Yes. So that is the underlying reality. Just as a legal matter, do we say therefore that's part of the record on which we can rely in evaluating the judgment or because it's a separate defendant, we can't attribute it to this case? I think that you can rely in part on that, but I don't think this court needs to make that decision because I think that there was ample evidence. I'm asking you if we think it's important. How do we think about the status of that recording? I think that there's no doubt that the judge was able – that the district court was perfectly permitted to rely on that among the other pool of evidence. I have one small question, which is that recording itself, when it was introduced in Ricardo's sentencing, if I'm not mistaken, it was introduced to show that there should be a longer period for awarding restitution. And the district court actually thought it was too speculative because it refers to extortion payments, but there aren't specific numbers, and so therefore it can't be the basis for extending restitution back to 2008. So, in fact, the context in which it's introduced, even in the other proceeding, the district court thinks it's too speculative. Does that mean we should hesitate before relying on it for this purpose in this case? No, Your Honor, because the issue in Mr. Ricardo's restitution litigation was whether there was evidence of the exact numbers underlying the total order. So it provides a preponderance of the evidence for Uvito's knowledge, but not for the amounts of the extortion, you're saying? I think that's right. I think it's clear that based on – as far as the amounts of the extortion, the district court here was comfortable relying on the – The bank records. The bank records, and not on anything beyond that. The cases you're relying on, Subnani, and which is the other case you're relying on? Maurer, Your Honor. Maurer. In both those cases, what's being referred to is the trial record, that the trial record could support a sentence even if it didn't – even if it went beyond the arguments being made at sentencing. The trial record for the defendant being sentenced, right? That's right, Your Honor. In Maurer, the court's – Now, that's not this case. No, Your Honor. That's different. So tell me what you've got that says a sentencing of one defendant can be supported by evidence adduced at the sentencing of another defendant, which evidence we have no basis to think was ever part of the record in Mr. Uvito's case. I mean, that seems to me to be a very clear distinction between Subnani and Maurer. You expect the defendant knows what came out at his own trial. Absolutely, Your Honor. I think in this case, we know that the defendant was aware of the prior litigation because he raised it at sentencing. But I also think that we do not need to make a decision. The court need not decide whether that prior information is permitted to be relied upon by the judge in this case because he had more than enough evidence in front of him based on the PSR and the arguments at sentencing. And, Your Honor, I just want to also reiterate, a court acts within its discretion in imposing a restitution obligation unless its ruling – this is from Katabchi – unless its ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions. And that's quoting another decision from this court, Certified Environmental Services, Inc. Mr. Uvino cites no cases, Your Honors, that the court needs to recite this particular standard or the reason for its decision on the record. This is because there is no such requirement. There is no special proclamation stating that a court must state the rule in Bengis and indicate exactly why the district court is making the decision that it's making. And, in fact, in cases like Fumano and Katabchi, the court did not make those special types of proclamations on the record. And so we can infer that the court made its decision based on the information that it had before it and that it decided that based on the appropriate law. For example, the Bengis case is what the government is arguing is the case that really controls here. The court cited the Bengis case in Mr. Ricardo's sentencing submission, sentencing, excuse me, in its order on Mr. Ricardo's restitution. And so there's no doubt that the district court was aware of Bengis and was aware of the appropriate standard here. And there's no doubt that the district court had before it ample information that the defendant knew or should have known or should have known about the history of the extortion scheme in this case. It should have known. You're emphasizing that because even if you don't literally know when you take over an extortion scheme, you should know the extent of it and its history. That's exactly right, Your Honor. That's exactly right. OK. Thank you very much, Mr. Wright. I guess there's no further questions. We'll hear back from Ms. Johnson on rebuttal. Thank you very much. Thank you, Your Honor. Quickly, there was one question that was asked that I don't think actually got answered, which was what was the district court's order and finding here on restitution? And this is it. I am going to order restitution. Sorry, I apologize, Your Honor. A340. I am going to order restitution in the full amount of $280,000 and $890 for the benefit of John Doe No. 1, as I have done for at least one other defendant in this case. And then he starts talking about scheduling. So it's pretty clear that the judge is, I think, essentially just saying, I'm applying exactly the same thing as I did in Mr. Ricardo's case. I don't know. So as we were saying before, you know, Uvino makes an argument, the government opposes, it's presented to the district court, the district court squarely rejects it. It's true the district court doesn't elaborate on the reasons, but we do have a normal presumption that a district court takes into account all the arguments and evidence before it unless the record compellingly suggests otherwise. And so why is it compelling here? Isn't the normal inference like the district court saw the arguments that he didn't actively participate until a later time? He saw the argument that, no, he was aware or should have – knew or should have known of the scope of it and decided that he knew or should have known. The finding of fact would have to be supported by something in the record. But why isn't what Mr. Wright just said compelling, that if you are a member of a crime family, you take over an extortion scheme, you probably know the scope of it when you take it over, but at the very least you should know the scope of it? And so why isn't that even by itself enough evidence that he knew or should have known? Is it enough to show that you specifically know that it went back to 2011? Is it enough to know that you are aware of the full scope of the time, that you have a sense of how long it was? You're asking me questions, but I want an answer. I don't think it is. I don't think it's enough. So why isn't it enough? Why would that be? So if I take over an extortion scheme of a person that I've known for decades in an organization, a union where I've worked before going back decades, why wouldn't I know or should have known the history of that extortion scheme? I'm not sure you care. Mr. Ravino, for the large part of this scheme, is in prison or on supervised release. He, in fact, only comes off supervised release in 2019. He got out of prison in 2016. Sure, the best interpretation, he comes in, he comes back to his old job in 2019. They're like, please run this scheme for us. He has no reason to need or care or ask how long back it went. What he cares about is can I keep it running or can I make it start running and can we start getting these numbers? There's nothing that shows that he has knowledge going back to 2011 or 2008 or any of these years that we're talking about. Can I ask a question a different way? How was discretion abused by concluding that the pairing of the fact that he's in charge of a longstanding scheme and he's known all of the actors for at least as long together, not enough to at least meet an abusive discretion scheme? Well, I would say two things, which is one, the first one is that I think it is abusive discretion given the inadequacy of the procedures that are being used here and the inadequacy of the opportunity given to Mr. Ravino to contest it. But number two- Is what you're saying about back and forth below wasn't enough? No, it's certainly not enough. Can you explain why? Because the district court never makes it clear what evidence it's relying on or even considering to make this finding a fact and Mr. Ravino has- But that's after the fact. That's maybe not explaining the reasoning. That's not the same thing as not having the opportunity to contest it. Would you agree? I mean, that might be bad for us on review because we don't know what was animated.  But the question I'm asking is why was that not enough opportunity to contest it? Because Mr. Ravino is in a position where he's dealing with an order that was made without him being present or having any notice or any opportunity to participate. He is coming in and he is saying that order shouldn't be applying to me and the court doesn't give him any opportunity to say what it is looking at to say that yes, it does. The court isn't saying, well, what about this conversation? I'm going to rely on this. He's not giving him any material opportunity to actually contest what's going on. So you're saying that in order for it to have been enough process, the court should have said, I'm thinking about X, I'm thinking about Y, and I'm thinking about Z. Or even just tell me why Mr. Ricciardo's order doesn't apply to you. Or what are the facts that argue in your – I mean, it's the government's burden, frankly, clearly, under the law, to show that this order was correct. And the government never once in the district court concerning Mr. Ravino says his knowledge is shown because of X, Y, and Z. They just get up and say it should be applied to him because it should apply to all the defendants, period, full stop. Mr. Ricciardo's order governs. That's all we care about. So it's not anything like the meaningful opportunity that we're talking about. And I do apologize that this case was not cited in the brief, but I do want to call it to the court's attention, which is United States v. Harris, 813 Federal Appendix 710. This is decided in 2020. And this is the most similar – Is this a summary order if it's a federal appendix? Let me just confirm that for sure. Yes, summary order, Your Honor. Two defendants, guilty plea, separate sentencing proceedings. The restitution order is determined in the FATICO hearing for one defendant and automatically applied to the other one. That defendant contests the restitution order on the grounds that he did not have noticed that that proceeding was going to generate his restitution obligation and that he was not able to appear and contest. And this court reverses it. They don't look at whether the order was valid, whether the evidence supported it, any of that. They're just like, no, you can't be bound by that. It is getting vacated and reversed so that you can hear it. That's not quite this case. It isn't exactly the same. The client disputed whether he should be held responsible, right? I'm sorry, I don't understand the question. Am I right that your client disputed that the whole amount should be attributed to him? He did. So it's not like he didn't know that that was going to be an issue. It doesn't seem to me that that summary order helps us much. I agree that it is not a perfect analogy by any means. Well, this is Bengus. Bengus controls this case. Bengus controls this case. But what Bengus, the problem that we have is, frankly, that the law very rarely deals with this kind of issue. The cases tend to be people challenging is the loss amount valid or not? And these due process issues and the adequacy of the hearings, as Your Honor pointed out, are often described on trial records, which is not what we have here. Harris is really the only thing that I've been able to find where we talk about two separate defendants and can one defendant's order bind the other, and it says no. And so in Mr. Ricciardo's proceeding, Mr. Uvino doesn't have notice. He has no way of knowing it binds him. He doesn't show up, and it doesn't address the issue that's important here. And then when we get to the district court, the district court may in fact be relying on what it heard and saw and decided around Mr. Ricciardo's proceeding, but Mr. Uvino had no chance to contest those things, and there's no real process here that is done to decide whether or not he actually knew or didn't know and how far his knowledge goes back. On this narrow issue of what is the record, so it seems to me probably just as a matter of reality, the district court has in mind all the evidence that the district court saw leading up to the restitution order, including in the sentencings of the co-defendants. I take it your position is that even though that's what the district court had in mind, that's not part of the record on which we can rely in evaluating the judgment here. It doesn't get brought up at Mr. Uvino's sentencing hearing. It is never mentioned in any court appearance that involves Mr. Uvino. Well, if there was some evidence, so like let's say Mr. Uvino had a trial. There was some evidence that was introduced at trial. It wasn't brought up at the sentencing, but we would be able to say, but, you know, when the district court made this ruling, it had in mind that evidence that it had seen over the course of the trial. That would be fine. Sure, because Mr. Uvino is present and he can cross. So my question is, as a literal matter, it is right that the district court was probably had in mind the evidence he saw with respect to the co-defendants, but is there a reason for saying that's not part of the record on which we can rely in evaluating the judgment in this appeal? Yes, because Mr. Uvino is entitled to an individualized determination where he gets to contest the issues that are relevant for him. That would be an error, right? And as you agreed before, we evaluate that for harmlessness. And so when we decide whether it was harmless or not, we look at the record and what the result would have been but for the error. And so I just kind of wanted to know whether part of what we look at is the development of the restitution order in the proceedings with respect to the co-defendants. Look, I guess my question, my concern here is, and I'm not saying that, sorry, let me rephrase this. I think there is a letter sent to the court in Mr. Ricciardo's case that quotes the May 13, 2020 court conversation.  Your client is not copied on that. No. So there is no transmittal of it to defense counsel to alert him to the fact that it's going to be pertinent also to Mr. Uvino's case. Exactly. And the fact that Mr. Uvino's counsel at his sentencing is aware of the results of Mr. Ricciardo's hearing in no way suggests that he's on notice of anything else. But it might be in the scenario that I described where something was produced at trial that didn't come up at sentencing. The lawyer might say, well, yeah, that was at the trial, but I wasn't thinking about that at the sentencing and nobody brought it to my attention. And that might be true, but that's too bad because it was part of the record, right? So does this really hinge on whether the lawyer was specifically aware of it or could we say that when you sentence co-defendants with overlapping issues and evidence, the record of the sentencing of the co-defendants is one record on which a district court can rely in sentencing the other co-defendants? I think the question is what can you rely on it for and what is the record that we're considering, right? That is the question. That's what I was asking. And the fact is that this conversation was introduced at Mr. Ricciardo's hearing and to the extent there was any challenge to it brought by Mr. Ricciardo's counsel, it's around an issue that is not being decided in Mr. Uvino's case. Sorry, can I ask though, if you didn't contest the amount, then that must mean that you either thought the amount, or I'm sorry, not you, if trial counsel, I keep doing this, I apologize. If trial counsel didn't contest the amount and you're not contesting it now, then that either means that there was enough evidence suggesting that when in 2019 that amount was incurred or that it went back further, right? One of those two things have to be true. The amount that the district court awarded in Mr. Ricciardo's case went back to 2011. The question is basically there are monthly payments. And Mr. Uvino's position at sentencing was that not that the monthly payments didn't happen or not that the amount wasn't what the district court found it to be, it's that he personally could only be responsible for the months starting in 2019 going forward. And what Mr. Ricciardo's sentencing hearing addressed was more specifically those things that weren't being challenged. What was the amount of the payments and over what time of period were they made? I guess that's my point though, is that if there was some lack of contestation that that was the scheme that was going on that long, then can't there be some sort of inference that he knew that the scheme went that long? Otherwise he would have said, I don't know what goes back to 2011. I can only speak to an amount of 2019 and that is an amount of X, Y, and Z. Is that another thing that was in the head of the district court potentially? But that is exactly what Mr. Uvino's position was at sentencing. You know, we don't, is that he only, even if those payments were being made going back to 2011, the court has found that we don't know one way or the other. What we do know is everyone agrees, everyone agrees that Mr. Uvino is only involved starting in 2019. And he, therefore, I believe the amount was something like $20,000. He's not saying I don't, I'm not responsible for any of this or these losses are fake. He's saying this time period. I'm just trying to figure out how much the fact that he agreed to be part of this amount when he's claiming he didn't know how the amount got like accumulated because he wasn't involved. Or how much can we infer the fact that he wasn't disputing the amount means that he knew something of the larger scheme. He sure knows it by the time he's being sentenced. I'm not quite sure what we're talking about in terms of agreement and knowledge. And what the time frame is. You're agreeing that the evidence is sufficient to show that the scheme as a whole netted that amount at the same time that you're telling the district court that your client is not responsible for all of that. Exactly, Judge Rogge. Yes, thank you. Okay. Thank you very much, Ms. Johnson. Thank you. The case is submitted.